Hauel et al. *vs.* Mintzer et al.

In Special Term—December 1854.

STORER, J. presiding.

### HAUEL et al. *vs.* MINTZER et al.

A debtor in failing circumstances, if he acts in good faith, may prefer one of his creditors, either by payment of the debt, or securing the amount due by mortgage, or confession of judgment.

The security of a debtor, is a creditor within the meaning of the rule, though he may not then have paid the debt, and may only be liable on a condition yet to happen.

When the accommodation endorser has assumed the payment of notes not yet due, and thereby makes himself absolutely liable for their payment, he may in good faith take a mortgage, or other security from the debtor, to indemnify him from ultimate loss.

A judgment confessed by the debtor to the security under such circumstances, for the amount of the debt thus assumed, is valid and will be enforced in equity.

STORER, J.

The plaintiffs allege in their petition, that they recovered a judgment on the 16th of October last, in this Court, against the defendants, E. S. Mintzer and H. B. Malone, for $294.32; that on the 12th day of the same month, the defendant W. H. Malone obtained a judgment against the same parties, by confession in the same Court, for $6,845.80, upon which execution has issued, and a levy been made, upon the stock in trade of the judgment debtors.

It is further stated, that the judgment thus confessed is fraudulent, as to creditors; that it was not founded in any actual indebtedness, but, if upon any, then for one thousand dollars only. Other facts are alleged, but I have stated the most important.

The defendant, H. B. Malone, denies all fraud, and insists that the judgment was confessed upon an existing indebtedness, and the transaction was conducted in good faith throughout.

No replication has been filed. The facts of the case in substance are these: Mintzer & Co. were manufacturers of brushes, and dealers in those articles; they had been, for several years, aided in their business by H. B. Malone, the brother of one of that firm, in obtaining money for the use of the partnership.

He made his notes to Mintzer & Co., from time to time, which they negotiated for their own benefit. Some of these notes were renewed, or several of them, at the request of W. H. Malone, Bailey & Langstaff, who are also defendants, became endorsers.

To show that these notes were for the accommodation of Mintzer & Co. solely, though W. H. Malone was thus made primarily liable, they executed, at the several times when they received his notes, their own of similar amount, date, and time of payment; these last were held by him for the purpose, as it is proved, of security only. If Mintzer & Co. should have paid the notes given to them by Malone, he was then obligated to cancel those they had made to him.

Early in October last, the defendant W. H. Malone become satisfied that Mintzer & Co. could not continue in business, and pay their debts; their stock had been reduced to less than five thousand dollars, at the highest valuation; they were constantly applying to him for pecuniary aid, until he found, in justice to himself, as he states, he could assist them no longer. A suit had been brought by the present plaintiffs, and was then pending, and would soon be in judgment.

On examination he then found that he was the maker of ten promissory notes, varying in date from July 15th, 1854 to September 21st, 1854, and becoming due at

different times from October 15th, 1854, to December 16th, 1854; amounting in the agregate to $6,505.85, in various sums from $375 to $1,000. These notes had all been given to Mintzer & Co., for their accommodation, and negotiated by them for their sole use; and for which they would be liable to the maker, should he be compelled to pay them.

Under these circumstances it was agreed between Mintzer & Co. and W. H. Malone, that the notes given by them to him, should be given up, and a judgment confessed for the whole amount, on condition that he should assume and pay the notes they had negotiated, as they became due. As between the parties this assumption was made, the notes held by Malone were given up to Mintzer & Co., and a judgment accordingly confessed for the actual sum for which Malone was held to third parties, for the benefit of Mintzer & Co.

Within a day or two of the date of the judgment, Malone, it is shown, paid one thousand dollars on account of these notes, and has since paid or assumed, so that Mintzer & Co. are discharged from all liability, the whole amount, with the exception of $1,400 or $1,500, which are not yet due. An execution issued upon this judgment, which was levied upon the debtor's stock.

The sheriff has sold it, and the entire proceeds, though a credit was allowed to the purchasers, so that the largest price could be obtained, amount to $3500; that sum is now in Court, to be distributed among the creditors, according to their several liens.

The plaintiffs, to sustain their petition, have introduced Mintzer, one of the defendants, who states, that he was induced to confess this judgment, with his co-defendant,

48

under the belief that the judgment creditor would permit them to continue in business, and protect the property from other creditors. His statement, however, is very vague, and cannot be viewed in any other light than the expression of the deponent's wishes, or impression, and not the agreement or understanding of the parties. More especially, as the fact is denied by his co-partner, his creditor, and Bailey, a co-defendant, who, although made a party, testifies that he has no interest in the litigation.

Besides this, it is in evidence that the firm was largely involved, and could not further transact their usual business, without the continued assistance of their friends; and how it is that, under such circumstances, the debtor could have expected further indulgence, when the apparent purpose was to secure so far as the parties were able, their confidential endorser, to say nothing of the fact that, in the best aspect of the case, the creditor must lose more than half his debt, we cannot clearly understand.

Moreover, the witness, by asserting a fraud thus alleged to have been perpetrated, makes himself a *particeps criminis*, and to such evidence the law will apply the most rigid tests.

In all similar cases the rule is to reject the testimony, unless it is corroborated. The allegation of fraud, as thus assumed on the statements of this witness, is not in our judgment proved; nor does the conduct of the creditor, at the time of the sale on execution, or subsequently, though strongly urged by the plaintiff, as exhibiting such an intention, furnish, as we believe, any ground for suspicion, even, of bad faith.

It is further contended by the plaintiff, that the judgment ought to be set aside, and declared fraudulent as to

creditors, because there was no present consideration to support it, the liability of the creditor being contingent only, and as he might never be called upon to discharge the notes, he had no right to ask indemnity from his principal.

This assumption, if urged to its legitimate result, would prevent an endorser from being secured by the maker, for whose accommodation he has guarantied the note, and would apply to all sureties upon bonds, whether private or official, where protection is not only given, but required by the surety, either by mortgage or other indemnity, at the time the obligation is made. It would practically declare, that what has hitherto been regarded as just, and has been sanctioned by our Courts, should be abrogated, and no security held to be valid, unless a debt was due *in prœsenti.* Such has not been the ruling of the Courts. 1 *Edw. Chy.* 26, Cunningham *vs.* Freelow; 2 *Ohio St. R.,* Choteau et al. *vs.* Thompson et al.; 17 *Johns.* 102, Milten *vs.* Wayland; 2 *Johns. Chy.* 306, 307, Hendrich *vs.* Robinson.

We must therefore hold the accommodation endorser to be the creditor of the maker, and it cannot be doubted, but a failing or insolvent debtor may prefer his creditor, if it is done in good faith. The mode of preference is immaterial. It is subject to the same legal construction, whether it is by deed, sale, or judgment; the form of the instrument can give no peculiar character to the transaction, though the judgment confessed in the open court, is liable to less suspicion, and would require stronger evidence to impeach it for fraud, than a private arrangement between the parties themselves; 21 *Ohio* 49, Doremus et al. *vs.* O'Hara et al., *ib.* 237, Atkinson *vs.* Tomlinson.

It has long been held, that under the statute of 12 *Eliza-beth, ch.* 5, which embodies the principle features of our stat-ute of frauds : " That the mere preferring one creditor to another, is not a ground to impeach the transaction, and though a man be sued to judgment, and executed by one of his creditors, it has been decided that he may give the preference to another by voluntarily confessing judgment to him, and this even where the debt is of inferior rank to that upon which the suit had been brought." *Roberts on Fraud. Con.* 494, Holbin *vs.* Anderson, 5 *T. R.* 235.

The same rule was adopted by Chancellor Kent, in Williams *vs.* Browns, 4 *Johns. Chy.* 684, who held, " that unless a series of authorities was to be overruled by the Court, they could not question the right of the debtor to confess a judgment in favor of a particular creditor for an honest debt then due, and that such judgment will hold its priority." The same doctrine is very elaborately illus-trated, and ably sustained by Chancellor Harper, in *Rice's S. C. Rep.* 7, Ex'r of Stile *vs.* Rogers, *ib.* 73, Beiro *vs.* Aiken. An examination of these cases very readily fur-nishes the distinction between the facts orally disclosed in the controversy before us, and those assumed on trial.

It is argued, however, that as there was no debt due, when the judgment was confessed, that the liability was conditional only. We do not so regard the case. The creditor was primarily liable upon the notes to those who had purchased them of the payee, though he was but a surety for the real debtors; this suretyship was discharged; and the absolute indebtedness assumed by Malone, when he gave up the notes between him and Mintzer & Co., became a binding agreement that he would take up the notes at maturity, without looking to his former principal

for indemnity. Besides, the debtors were insolvent, and there was not even the distant probability of their future ability to pay their obligations; an assumption of the debt, therefore, under these circumstances, precludes the idea that there could have been any anticipation on the part of Malone, that he would derive any aid from the parties, who had already involved him to an amount equal to two thirds of their entire indebtedness.

We think the debt, by the consent of the parties, became legally due, and furnished a sufficient consideration for the confession of the judgment.

We have been referred to Sanford et al. *vs.* Wheeler, 13 *Conn.* 165; North *vs.* Belden et al., *ib.* 376, and 15 *Conn.* 504, Agry *vs.* Huston et al. The first two cases were those of mortgages, the next of confessed judgment, but a careful examination removes any seeming repugnance between the law, as there held, and that which we regard as governing this case; there is nothing in either inconsistent with the general principle we have asserted.

We are satisfied that the confessed judgment ought to stand, as it is not in our opinion fraudulent as to the creditors, or intended so to be. We must adhere to the law as we find it, and though we might wish, that we could appropriate the debtor's property among all the creditors, the fact, that a preference has been given in good faith, that the law will sustain, forecloses all power on our part to make any such distribution.

As between the plaintiff and the defendant Malone, their several liens are equal. By the statute, each will share in the sale of the property, both judgments having been rendered at the same term, and execution taken out at the proper time. In this race of diligence there can

be no preference; it would be as inequitable to decree the full payment of the plaintiff's judgment, as it would be that of the defendant, and we therefore leave them to their legal remedies.

It cannot be unheeded by the Court, that the only ground of the plaintiff's claim to full satisfaction, is his judgment, and if he could subject the property, it must be at the expense of the other creditors, over whom he has no more equity, than the defendant, who we think is clearly protected to the full extent of his equity.

This disposes of all other questions mooted on the trial.

The bill must be dismissed.

THOMSON & JOHNSON, and WOODRUFF & HOPKINS for the plaintiff.

MINER, CLARK, & OLIVER for defendant.

In Special Term—January 1855.